Michelle Bradford (DC Bar # 491910)
Barnes & Thornburg LLP
1717 Pennsylvania Avenue NW #500
Washington, DC 20006
Phone (202) 408-6922
Fax (202) 289-1330
Michelle.Bradford@btlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Levi, Ray & Shoup Inc.**<br>2401 W Monroe Street<br>Springfield, IL 62704<br>　　　　　**Plaintiff**,<br>　　　vs.<br><br>**U.S. Department of Homeland Security**<br>Office of the General Counsel<br>U.S. Department of Homeland Security<br>2707 Martin Luther King Jr. Ave, SE<br>Washington, DC 20528-0485<br><br>**Alejandro Mayorkas, Secretary,**<br>**U.S. Department of Homeland Security**<br>Office of the General Counsel<br>U.S. Department of Homeland Security<br>2707 Martin Luther King Jr. Ave, SE<br>Washington, DC 20528-0485<br><br>**U.S. Citizenship and Immigration Services**<br>Office of the Chief Counsel<br>20 Massachusetts Avenue, NW, Room 4210<br>Washington, DC 20529<br><br>**Tracy Renaud, Senior Official Performing**<br>**the Duties of the Director,**<br>**U.S. Citizenship and Immigration Services**<br>Office of the Chief Counsel<br>20 Massachusetts Avenue, NW, Room 4210<br>Washington, DC 20529<br>　　　　　**Defendants**. | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） | **Civil No.** 1:21-CV-487 |

## COMPLAINT FOR DECLARATORY RELIEF

## INTRODUCTION

1.     Plaintiff Levi, Ray & Shoup Inc. ("LRS") is a leading provider of print management software to many global corporations. More than half of the Fortune 500 and Fortune 500 Service companies rely on industry-leading LRS solutions, with products in use in over 30 countries. LRS has grown to become a global technology company that includes several different divisions and employs more than 700 people throughout North America, Europe, Asia, and Australia.

2.     LRS's flagship product, VPSX, is an enterprise output management software that helps businesses capture documents from any application or platform and simplifies how businesses collect, store and deliver information, making it accessible and available to the people who need it when they need it. The software is very popular with LRS clients since the tool provides sophisticated output management and gives the largest companies in the world control of a large number of devices with a small machine at a reduced cost.

3.     Because most of LRS's clients are in North America, and because of the tremendous significance of VPSX to LRS's competitiveness and the jobs of its U.S. workers, it is extremely important that it have access to the specialized knowledge necessary to continue the use and development of VPSX software; thus LRS requires someone with specialized knowledge of VPSX to work in its Springfield, Illinois headquarters to maintain and support this product.

4.     Mr. David Woodfield has the most substantial experience of any existing LRS employee with VPSX. No other employee at LRS possesses Mr. Woodfield's experience or expertise customizing VPSX or his corresponding specialized knowledge of VPSX's architecture and code.

5.     LRS offered Mr. Woodfield relocation from the United Kingdom and continuing employment in the United States in a role that will involve his specialized knowledge of VPSX. He was invited to join LRS's Springfield office in the role of Senior Programmer/Analyst VPSX

with the objective of providing better product support to business and increasing LRS's revenue growth as a result of the company's VPSX software products.

6.     As LRS's foremost expert on VPSX, Mr. Woodfield's transfer to the U.S. is critical to LRS's ability to fully serve its customers, who rely heavily on VPSX. The importance of Mr. Woodfield's U.S. presence to LRS's revenue growth and competitiveness is the reason why the company has invested substantial resources in transferring Mr. Woodfield to its U.S. headquarters.

7.     On July 2, 2020, LRS filed Form I-129, Petition for Nonimmigrant Worker ("L-1B petition"), on behalf of Mr. David Woodfield, in order to classify him as an intracompany transferee with a concurrent request for consulate notification (*see* Ex. A), along with documentary evidence substantiating that the Senior Programmer/Analyst VPSX works in a "specialized knowledge" capacity, as required by the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* (the "INA"). *See* Ex. B.

8.     The evidence presented shows that Mr. Woodfield is eligible for classification as a specialized knowledge worker because (i) he has been continuously employed in a position involving specialized knowledge for at least one of the preceding three years; (ii) Mr. Woodfield's position in the U.K. involved the application of specialized knowledge in international markets; and (iii) Mr. Woodfield's intended position in the U.S. continues to involve specialized knowledge.

9.     On December 14, 2020 Defendant U.S. Citizenship & Immigration Services (USCIS) denied LRS's L-1B petition on the grounds that "the evidence of record is insufficient to establish that the U.S. position, Senior Programmer/Analyst VPSX, involves special knowledge or an advanced level of knowledge in the software/information technology field." Ex. E at 10.

10.    In denying LRS's petition, USCIS (i) misconstrued federal laws and regulations; (ii) ignored large and material portions of the presented evidence; and (iii) impermissibly imposed

novel and substantial evidentiary standards. The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA") forbids precisely this type of arbitrary and capricious decision making.

11.     Plaintiff is without adequate remedy at law and Defendants' conduct has caused and will continue to cause irreparable harm absent relief from this Court. USCIS's wrongful denial of LRS's L-1B petition will significantly harm LRS's U.S. business and along with it, American jobs made possible by LRS's access to uniquely talented foreign nationals. The denial of LRS's L-1B petition has been especially disruptive to LRS due to time zone differences and the difficulties of making optimal use of Mr. Woodfield's specialized knowledge while he is in a different country.

## PARTIES

12.     LRS is a privately held multinational corporation headquartered in Springfield, Illinois.

13.     The U.S. Department of Homeland Security is the federal agency bearing responsibility for administration and enforcement of the nation's immigration laws.

14.     Defendant Alejandro Mayorkas is sued in his official capacity as Secretary of the U.S. Department of Homeland Security, in which he is charged with the just administration and enforcement of the immigration laws. 8 U.S.C. § 1103(a).

15.     U.S. Citizenship and Immigration Services, a bureau of the U.S. Department of Homeland Security, is responsible for adjudicating and approving visa petitions in appropriate circumstances consistent with the INA. As used below, "USCIS" refers to both the U.S. Citizenship and Immigration Services, and its predecessor agency, U.S. Immigration and Naturalization Services ("INS").

16.     Defendant Tracy Renaud is sued in her official capacity as Senior Official Performing the Duties of the Director of USCIS.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977) (except where statutes preclude review, 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action"). *See also*, 5 U.S.C. § 702; 28 U.S.C. § 1361; 28 U.S.C. §§ 2201–2202.

18.     Because Defendants' decision on a petition for L-1B visa status is not discretionary, neither the immigration laws (*see*, *e.g.*, 8 U.S.C. § 1252(a)(2)(B)(ii)) nor the APA withdraws jurisdiction. *See*, *e.g.*, *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003).

19.     Venue properly lies in this judicial district under 28 U.S.C. § 1391(e), in that Defendants are agencies and officers of agencies of the United States, and Defendants Alejandro Mayorkas and Tracy Renaud, sued in their official capacities as Secretary of the U.S. Department of Homeland Security and Director of USCIS, respectively, reside in this judicial district. *See* 14D Fed. Prac. & Proc. Jurisdiction § 3815 (4th ed.) ("under Section 1391(e)(1)(A), a suit may be brought in any district in which a defendant in the action resides . . . the relevant inquiry is the official residence, and not the personal residence of an individual being sued.") (citing, *e.g.*, *Williams v. U.S.*, No. C-01-0024, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001) ("For purposes of venue, all federal defendants reside in Washington, D.C.")).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.     USCIS's denial constitutes final agency action. *See Darby v. Cisneros*, 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (U.S., 1993) ("Federal courts do not have the authority to require a plaintiff to exhaust available administrative remedies before seeking judicial review under the APA, where neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review.") Furthermore, the Department of Justice has already acquiesced

to the proposition that one is not required to file an appeal with the USCIS' Administrative Appeals Office ("AAO") prior to commencing suit in federal district court.  *See RCM Techs., Inc. v. United States Dep't of Homeland Sec.*, 614 F. Supp. 2d 39, 44-45 (D.D.C. 2009).

## **LEGAL STANDARD**

### *Statutory*

Section 1101(a)(15)(L) of the Immigration and Nationality Act (INA) states:

> [The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens--]

> subject to section 1184(c)(2)…an alien who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge, and the alien spouse and minor children of any such alien if accompanying him or following to join him[.]

Section 1184(c)(2)(B) of the INA states:

> For purposes of section 101(a)(15)(L), an alien is considered to be serving in a capacity involving specialized knowledge with respect to a company if the alien has a special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company.

### *Regulatory*

Section 214.2(l)(1) of Title 8 of the Code of Federal Regulations provide in relevant part:

> Admission of intracompany transferees—

>> (i) General. Under section 101(a)(15)(L) of the Act, an alien who within the preceding three years has been employed abroad for one continuous year by a qualifying organization may be admitted temporarily to the United States to be employed by a parent, branch, affiliate, or subsidiary of that employer in a managerial or executive capacity, or in a position requiring specialized knowledge. An alien transferred to the United States under this nonimmigrant classification is referred to as an intracompany transferee and the organization which seeks the classification of an alien as an intracompany transferee is referred to as the petitioner. The Service has responsibility for determining whether the alien is eligible for admission and whether the petitioner is a qualifying organization. These regulations set forth the standards applicable to these classifications. They also set forth procedures for admission of intracompany transferees and appeal of adverse

decisions. Certain petitioners seeking the classification of aliens as intracompany transferees may file blanket petitions with the Service. Under the blanket petition process, the Service is responsible for determining whether the petitioner and its parent, branches, affiliates, or subsidiaries specified are qualifying organizations. The Department of State or, in certain cases, the Service is responsible for determining the classification of the alien.

(ii) Definitions.

> (A) Intracompany transferee means an alien who, within three years preceding the time of his or her application for admission into the United States, has been employed abroad continuously for one year by a firm or corporation or other legal entity or parent, branch, affiliate, or subsidiary thereof, and who seeks to enter the United States temporarily in order to render his or her services to a branch of the same employer or a parent, affiliate, or subsidiary thereof in a capacity that is managerial, executive, or involves specialized knowledge. Periods spent in the United States in lawful status for a branch of the same employer or a parent, affiliate, or subsidiary thereof and brief trips to the United States for business or pleasure shall not be interruptive of the one year of continuous employment abroad but such periods shall not be counted toward fulfillment of that requirement.

> . . .

> (D) Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

> (E) Specialized knowledge professional means an individual who has specialized knowledge as defined in paragraph (l)(1)(ii)(D) of this section and is a member of the professions as defined in section 101(a)(32) of the Immigration and Nationality Act.

8 C.F.R. § 214.2(l)(1) (2020).

*Background*

21.     Prior to 1970, foreign employees of multinational corporations could not effectively transfer foreign employees to their U.S. operations without essentially qualifying them for permanent residence. Thus, out of concern that "the existing law restricts and inhibits the ability of international companies to bring into the United States foreign nationals with management, professional, and specialist skills," Congress created the L-1B visa program in 1970 through amendments to the INA. H.R. Rep. No. 91-851 (1970), reprinted in 1970 U.S.C.C.A.N. 2750, 2751-2754. The 1970 Act did not expressly define the term "specialized knowledge."

22.     In 1990, Congress revisited the L-1B program for the first time in twenty years and expressly rejected legacy Immigration and Nationality Service's (INS) construction of "specialized knowledge" as excessively rigid and restrictive. In formulating the new definition, Congress expressly rejected the "proprietary knowledge" and "US labor market" tests in the 1987 INS regulatory definition. *See* H.R. Rep. No. 101-723(I) (1990), reprinted in 1990 U.S.C.C.A.N. 6710, 6749.

23.     Legacy INS and USCIS have issued a series of memoranda emphasizing that specialized knowledge does not have to be "proprietary" or "unique." *See*, *e.g.*, Memo, Puleo, Acting Ex. Assoc. Comm., Office of Operations, INS, CO 214L-P (Mar. 9, 1994) (Specialized knowledge is knowledge that "is different from that generally found in the particular industry. The knowledge need not be proprietary or unique, but it must be different or uncommon."); Memo, Ohata, HQSCOPS 70/6.1 (Dec. 20, 2002) (it includes a type of specialized or advanced knowledge that is different from that generally found in a particular industry, but again need not be proprietary or unique).

### *Chevron* deference not applicable to relevant L-1B regulation

24.     While an agency's interpretation of a statute that it administers and its implementing regulations are generally accorded substantial deference, a court owes no deference to an agency's interpretation of its own regulation when, instead of using its expertise and experience to formulate a regulation, it has merely paraphrased the statutory language. *See Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1136 (D.C. Cir. 2014) (citing *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig*., 709 F.3d 1, 18 (D.C. Cir. 2013). In *Fogo de Chao*, the U.S. Court of Appeals for the District of Columbia found that the L-1B regulation at 8 C.F.R. § 214.2(l)(1)(ii)(D) "largely parrots, rather than interprets, the key statutory language." 769 F.3d at 1136.

25.     By extension, *Chevron* deference should not be accorded to agency memoranda purporting to interpret the relevant regulation at 8 C.F.R. § 214.2(l)(1)(ii)(D) and impermissibly imposing novel and substantial evidentiary standards in L-1B petition adjudications in contravention of required formal rulemaking procedures.

### *Standard of proof in L-1B petition adjudications*

26.     The applicable standard of proof in the adjudication of L-1B petitions is the "preponderance of the evidence" standard. Thus, even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the applicant or petitioner has satisfied the standard of proof. *See I.N.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987) (defining "more likely than not" as a greater than 50 percent probability of something occurring).

## FACTS

27.     Founded in 1979, LRS is a privately-held U.S. company with corporate headquarters located in Springfield, Illinois. LRS has remote offices located throughout the United States and in key geographic regions around the world including Cheltenham, U.K.

28.     LRS keeps its customers' businesses running with robust, highly scalable software that captures, stores and controls the huge volumes of document output they generate and reliably delivers it to hundreds of distributed locations regardless of format. With a ROI of less than 12 months, a 30-year track record of success and global sales and support organization—LRS is the market leader. Industry analyst groups recognize LRS as a global IT leader and Software Magazine consistently ranks LRS as one of the top software companies in the world.

29.     LRS's flagship product, VPSX, can reduce the number of print servers a business needs and the corresponding costs, such as floor space and energy. VPSX software can verify that documents reach their intended destinations, such as printers, fax servers and email addresses. It also includes automatic error recovery, network problem detection and remote problem resolution – all to help save paper, toner and the time of professionals.

30.     VPSX is the subject of IP, including copyrights and trademarks, and it is also the subject of significant media publicity in print and online sources because of its unique features.

***Mr. David Woodfield has been continuously employed for at least one of the preceding three years in a position involving specialized knowledge and its application in international markets***

31.     Since July 2010, Mr. David Woodfield has been employed as a developer focusing on VPSX at LRS's U.K. branch office. Initially, Mr. Woodfield worked closely alongside the creator of VPSX, who has since retired, and acquired significant knowledge about this copyrighted product directly from him. Not only was Mr. Woodfield one of the first few individuals to focus

on VPSX, but he has also actively worked with this product for the last 10 years—comparable to U.S. workers who have no more than 3 years of experience with this product.

32.     Mr. Woodfield has played a key role in the development of VPSX since its inception and his work has been integral to VPSX becoming an essential and profitable LRS product. A Senior Developer since 2018, he is heavily relied upon to oversee the work of his colleagues with any VPSX improvements and to oversee the integration of the VPSX product with the products of acquired companies, for example.

33.     Mr. Woodfield also operates at a high level of leadership within the company. He has led the development of various new features and fixed numerous bugs. He also led the VPSX software team in the U.K. and U.S. to finish a series of projects to improve the performance, stability, and usability of the product.

34.     Mr. David Woodfield possesses *specialized* knowledge of VPSX which is advanced by comparison to other similarly-employed individuals at LRS. Mr. Woodfield obtained his *advanced* knowledge of VPSX's software architecture and individual sections of code, as a result of his decade of experience working with LRS and his deep familiarity with the writing of the code underlying VPSX.

***LRS seeks to relocate Mr. Woodfield to its U.S. headquarters***

35.     The current time zone differences between the U.K. and the U.S. limit the times that developers from both countries can discuss issues related to VPSX. Because Mr. Woodfield provides advice and direction to the U.S. based software developers, his presence in the U.S. would greatly enhance his interactions with the developers and advance LRS's competitiveness.

36.     Mr. Woodfield's interactions with other LRS employees are primarily with his U.S. colleagues; thus, his employment in the U.S. office will enhance opportunities for such interactions

and the resulting innovation. Development of future enhancements and corrections to existing software can be completed more effectively if Mr. Woodfield works with the team in the USA.

37.     LRS offered Mr. Woodfield relocation to the United States and continuing employment in a role that will involve his specialized knowledge of VPSX. He will join LRS's Springfield office in the role of Senior Programmer/Analyst VPSX with the objective of providing better product support to business and increasing LRS's revenue growth as a result of the company's VPSX software products. Mr. Woodfield is very qualified for this role by virtue of his education, his expert training and experience with LRS abroad.

### *The intended U.S. position involves specialized knowledge*

38.     As Senior Programmer/Analyst VPSX, Mr. Woodfield will architect, design, code, test, and deploy fixes, enhancements, and additions to the VPSX family of products. He will conduct research, gather information, interpret data, and then create a solution for supporting, enhancing and expanding the VPSX family of products. Mr. Woodfield will also provide leadership on VPSX-related issues to ensure that other products interact correctly with VPSX. He will also mentor less experienced developers in all aspects of the development process related to the VPSX family of products, utilize his specialized and advanced knowledge of VPSX software and products, and exercise wide-ranging responsibilities that will involve senior leadership and specialized product knowledge. He will continue to work as the VPSX technical expert and will also continue to work directly with LRS's Vice President to develop a VPSX marketing strategy and to determine how features of VPSX operate.

### *LRS's L-1B petition on behalf of Mr. Woodfield*

39.     On July 2, 2020, LRS filed Form I-129, Petition for Nonimmigrant Worker ("L-1B petition"), on behalf of Mr. David Woodfield, in order to classify him as an intracompany

transferee with a concurrent request for consulate notification, with documentary evidence substantiating that the Senior Programmer/Analyst VPSX works in a "specialized knowledge" capacity, as required by the INA, 8 U.S.C. § 1101 *et seq.*

40.     The evidence LRS presented as part of its I-129 petition on behalf of Mr. Woodfield, demonstrates: (i) Mr. Woodfield possesses an *advanced* understanding of LRS's VPSX products; and (ii) Mr. Woodfield has made unique and *specialized* contributions to enhance the company's productivity because of his advanced understanding of VPSX's code, architecture, capacity for further product enhancement, and other applications associated with VPSX. While knowledge need not be proprietary in nature or even be narrowly held across the petitioning organization to be considered "specialized," LRS nevertheless showed that Mr. Woodfield's knowledge relates to its proprietary products and that Mr. Woodfield is the only individual across the company with advanced knowledge of the VPSX product.

41.     Among the evidence LRS presented in support of its L-1B petition were samples of Mr. Woodfield's work product with LRS's U.K. branch, as well as extremely detailed job descriptions for the following: (i) Mr. Woodfield's position when he first started working with the VPSX product as a junior developer in 2010; (ii) his current position as Senior Software Developer VPSX; and (iii) the intended U.S. position as Senior Programmer/Analyst VPSX; providing percentage allocations for each of the position's duties. *See* Ex. B. For example, LRS stated that 40% of the responsibilities of both his current position and the intended U.S. position involve full stack development for VPSX, including:

> A.  Design, architect and implement software solutions using the following development languages and associated tools: C, C++, C#, VBScript, HTML, JavaScript and CSS
>
> B.  Study published Request for Comments memoranda and protocol specification to develop enhancement ideas for VPSX

    C.  Consult with the Security Manager to determine security best practices for VPSX development

    D.  Develop VPSX code that will enable the product to be used on various operating systems: Windows, Linux, z/Linux, AIX, Mac OS, Sun Solaris, IBM AIX and HP UX

    E.  Implement best practices, latest trends and user expectations into the user interface for VPSX

Ex. B at 7-8, 13.

42.    On September 4, 2020, USCIS issued a Request for Evidence (RFE) requesting additional evidence to establish that (i) the proffered position of Senior Programmer/Analyst VPSX is one that involves the application of specialized knowledge, and (ii) Mr. Woodfield's prior role involved specialized knowledge and is thus eligible for the L-1B statutory classification. *See* Ex. C.

43.    LRS timely responded to the RFE, presenting additional evidence demonstrating that the role is one that involves specialized knowledge of LRS products, services, equipment, techniques, management, or other interests and its applications in international markets, and that Mr. Woodfield meets the minimum requirement for the role and in fact is exceptionally qualified to perform the responsibilities of the role. *See* Ex. D.

44.    The additional evidence LRS presented in response to the RFE included, but was not limited to, the following: (i) numerous examples of correspondence from Mr. Woodfield's peers (and some individuals who are at higher positions than Mr. Woodfield in the organizational chart) explicitly requesting his technical and coding assistance with regard to VPSX; (ii) a statement from a global manufacturer of chemicals and the second largest manufacturer of such products in North America explaining, among other things, how the company has used VPSX to integrate its print infrastructure with documents from their SAP application, including more than 21,000 printers in North America, Europe, and Asia; (iii) copies of Mr. Woodfield's pay records in the U.K. between

2011 and 2020; and (iv) a detailed organizational chart and explanation of how Mr. Woodfield interacts with his peers, and how they leverage and utilize his subject matter expertise. *Id.*

45.     On December 14, 2020 USCIS denied LRS's L-1B petition on the grounds that "the evidence of record is insufficient to establish that the U.S. position, Senior Programmer/Analyst VPSX, involves special knowledge or an advanced level of knowledge in the software/information technology field." Ex. E at 10.

46.     In denying LRS's petition, USCIS (i) misconstrued federal laws and regulations; (ii) ignored large and material portions of the presented evidence; and (iii) impermissibly imposed novel and substantial evidentiary standards. The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA") forbids precisely this type of arbitrary and capricious decision making.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### DEPRIVATION AND VIOLATIONS OF RIGHTS UNDER THE INA

47.     In denying LRS's petition on behalf of Mr. Woodfield, USCIS unlawfully interpreted and applied the term "specialized knowledge" under 8 U.S.C. § 1101 (a)(15)(L), including through the improper disregard of certain evidence and the imposition of an impermissibly high burden of proof on LRS. *Matter of Pazandeh*, 19 I&N Dec. 884 (BIA 1989).

48.     As a result, USCIS deprived LRS of its rights under the INA to benefit from the statute's intracompany transferee provisions, and thereby violated those rights. 8 U.S.C. § 1101(a)(15)(L).

### SECOND CAUSE OF ACTION
### VIOLATIONS OF APA

49.     USCIS's denial of LRS's petition on behalf of Mr. Woodfield is improper and reviewable under the APA. 5 U.S.C. § 702.

50.     As a result of these improper decisions by USCIS, LRS is "suffering a legal wrong because of agency action" and is "adversely affected or aggrieved by agency action," and  therefore "is entitled to judicial review thereof." 5 U.S.C. § 702.

51.     USCIS's decision to deny LRS's L-1B visa petition was based upon an interpretation contrary to and inconsistent with 8 U.S.C. § 1101 (a)(15)(L) and 8 C.F.R. 214.2(l)(1)(ii)(D).

52.     USCIS's decision to deny LRS's petitions on behalf of Mr. Woodfield, particularly in light of a record providing ample evidence of the "specialized knowledge" capacity of his employment, was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

53.     The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. USCIS breached its duty to take into account fully LRS's evidence supporting the employment of Mr. Woodfield in a "specialized knowledge" capacity. The APA directs that the "reviewing court shall . . .  hold  unlawful and set aside  agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. §706(2)(D).

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT ACT**

54.     LRS is entitled to a declaration of its rights, which shall have the force and effect of a final judgment, in accordance with 28 U.S.C. §2201(a).

**PRAYER FOR RELIEF**

LRS hereby prays for relief as follows:

1.      That the Court hold unlawful and set aside the USCIS findings that the evidence fails to establish that Mr. Woodfield has been and will be employed in a "specialized knowledge" capacity;

2.      That the Court hold unlawful and set aside the USCIS decision denying LRS's L-1B petition on behalf of Mr. Woodfield, as not in accordance with law;

3.      That the Court declare that LRS has submitted sufficient evidence to establish that Mr. Woodfield has been and will be employed in a "specialized knowledge" capacity, as set forth in INA Section 101(a)(15)(L), at 8 U.S.C. § 1101 (a)(15)(L);

4.      That the Court compel USCIS to perform its duty owed to LRS, and to adjudicate properly LRS's L-1B visa petition on behalf of Mr. Woodfield on the merits and in accordance with the above declarations;

5.      That the Court provide further relief as it deems appropriate, just, and equitable.


DATED February 25, 2021                          Respectfully submitted,



                                                 _/s/Michelle Bradford_
                                                 Michelle Bradford (DC Bar #491910)
                                                 Barnes & Thornburg LLP
                                                 1717 Pennsylvania Avenue NW #500
                                                 Washington, DC 20006
                                                 Phone (202) 408-6922
                                                 Fax (202) 289-1330
                                                 Michelle.Bradford@btlaw.com
                                                 Attorney for Plaintiff